# EXHIBIT X

EXHIBIT X

Gmail - Malibu Media - D. Md. - 13-3024 - Deposition and Discovery re IPP ... https://mail.google.com/mail/u/0/?ui=2&ik=3c2d6d25a6&view...

Case 8:14-cv-00874-CEH-AEP   Document 8-27   Filed 06/25/14   Page 2 of 11 PageID 384
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 232 of 270



Morgan Pietz <morganpietz@gmail.com>

---

## Malibu Media - D. Md. - 13-3024 - Deposition and Discovery re IPP "Oral Contingency Agreement"

3 messages

---

**Morgan E. Pietz** <mpietz@pietzlawfirm.com>                              Mon, Mar 3, 2014 at 2:02 PM
To: "Jon A. Hoppe" <jhoppe@mhhhlawfirm.com>
Cc: "John C. Lowe" <johnlowe@johnlowepc.com>

Jon,

Per our conversation  -- to confirm:

(1) I will get back to you regarding tentative date availability for a deposition of my client in this case, on Monday 3/31 or Tuesday 4/1.  If necessary, I will stipulate to extend the discovery deadline.

(2) Attached, please find a recent motion to exclude the testimony of IPP, on the ground that it comes from an expert (or fact) witness being impermissibly compensated on a contingent fee basis, filed in a Malibu case in Colorado, which will serve as a jumping off point for my further inquiry on this issue.  The verified discovery responses I mentioned from MM are attached as exhibits thereto.

As I explained, I would like a firm answer, under penalty of perjury, as to whether IPP was being compensated pursuant to an "oral contingency agreement" at the time it conducted the observations at issue in this case, and at the time it made its declaration which you used in support of your motion for early discovery.  I'd like to know what were the terms of the so-called "oral contingency agreement", when it stopped, and what are the current terms of the deal with IPP.

You made it very clear that you thought any attempt to investigate this issue would be bad faith on my part, and you would make a Rule 11 motion if I file any motion of any kind since your view is my client lacks standing to do anything other than have his deposition taken.  You further noted that you would not spend even one "split second" considering anything I sent you on this issue, and you threatened to make any cases we have together from here on out as unpleasant and as expensive as possible.

Respectfully, I disagree that this is bad faith or personally motivated on my part, and feel it is my duty to my client to investigate this issue, as the entire case against my client is apparently built upon compromised expert witness testimony that may very well be excluded.  You can review the attached motion for the law on that issue, at least as applicable in Colorado.

Since you are correct that my client is not yet a party to this suit, what I propose is making a motion to intervene and to propound limited early written discovery inquiring into the compensation structure for IPP.  I had offered that you could investigate and get back to me with something under oath saying this is all a big mistake, explaining why.  You refused, and said you would vigorously contest any attempt to make any inquiry into how IPP is compensated, as you think it is irrelevant, even though I noted that inquiries and impeachment as to how experts are compensated is essentially routine, par for the course trial practice.

If you change your mind, and want to try and explain, with something under oath, why the verified discovery responses previously served by your client about the "oral contingency agreement" are incorrect, there is indeed still a chance we can resolve this short of motion practice.  Note though, a declaration which says

---

Exhibit X - 1

'well, we don't do it anymore' which is how I read what your client tried to say before, is not going to be sufficient in my view.

Thus, absent a satisfactory explanation, I contemplate making a motion to be heard on this issue on an expedited time frame. It occurs to me that if IPP's potential testimony is excluded, and its contribution to the complaint is stricken, then you have no basis to take my client's deposition. As I mentioned, I am nevertheless willing to proceed with the deposition as scheduled, but in exchange I want some answers on this "oral contingency" issue to be similarly prioritized here for the first phase of pre-service discovery. If your position is that you will refuse to engage on the IPP compensation issue, I may make a motion to stay my client's deposition pending resolution of the IPP issue. Or, we can both get a round of limited discovery; you, the one hour deposition of my client; me, some answers to some limited written discovery on IPP's compensation structure. Your choice; but discovery should not be a one-way street.

I hope that after you have had a chance to calm down, and the shock of this apparent revelation subsides, that we can manage to continue to work together in a professional manner. Until today, I never had any cause to complain on that account as to our prior dealings. And despite your insistence that 'everything is personal,' I hope you can see that, at least as far as I am concerned, this really is not.

Best regards,
Morgan


--

Morgan E. Pietz
THE PIETZ LAW FIRM
3770 Highland Ave., Ste. 206
Manhattan Beach, CA 90266
mpietz@pietzlawfirm.com
Ph: (310) 424-5557
Fx: (310) 546-5301
www.pietzlawfirm.com

---

**8 attachments**

 **Exhibit A.pdf**
379K

 **Exhibit B.pdf**
366K

 **Exhibit C.pdf**
144K

 **Exhibit D.pdf**
161K

 **Exhibit E.pdf**
114K

**Exhibit F.pdf**
39K



**Kerr's Motion (Non-Comformed).pdf**
1296K



**Motion to Exclude FINAL.pdf**
92K

---

**Jon Hoppe** <JHoppe@mhhhlawfirm.com>                                    Mon, Mar 3, 2014 at 5:13 PM
To: "Morgan E. Pietz" <mpietz@pietzlawfirm.com>

Morgan:

Thank you for agreeing to set up a deposition of your client and get back to me about the date and tome of the same.

As to the entirely separate "issue" of the compensation of IPP, I will have a comprehensive response for you shortly. I am heatened somewhat by your suggestions that this "issue" might be resolved short of the waste of both our time and our clients' money on frivolous motions practice. I am initally disinclined to open the door to two-way preliminary discovery (particularly on the record in any case at bar) for reasons which I can briefly explain.

The preliminary discovery which my client has been granted in these matters is designed to resolve one issue only: whether the internet subscriber is the most likely actual infringer of my client's copyrighted material (and, if not, whom else might be the same). The preliminary discovery process is not designed to pre-litigate the sufficiency of the Complaint or the strength of any potential trial presentation of the same. Such "issues' are entirely premature until a John Doe defendant may be revealed, named and served. Your assertion that such discovery  is "kind of unfair" could not be further from the truth. To the contrary, the preliminary discovery process set out by the Maryland Court is designed entirely to protect the identity and reputation of the internet subscriber involved and to guard against any untoward or  coercive negotiation of the dispute.

Your criticism of my point of view on the nature and purpose of your raising this "issue" at this juncture of these matters is also entirely unfounded. Up until now, we have engaged in a number of matters in fruitful and professional discussion and negotiation of the real issues of whether the subscriber at issue is the actual infringer and if so, what is a fair compensation under which to settle. Your attempt now to suddenly use the preliminary discovery process already designed to protect your client to pre-litigate the case in chief clearly poison's the well of goodwill between us. Clearly, theft of copyrighted material is going on against my client's legally compensable interest on a grand scale. Your attempt to prevent that rightful compensation through clever argument and procedural manipulation is both professionally and morally reprehensible.

As to the response you expect to receive on the "issue" you have clearly prematurely raised, and as to your view of the sufficiency thereof, I think you are once again professionally off the mark. To the contrary, I should think that even in the absence of any statement under oath, you should be professionally willing to consider reference to clear statement of legal precedent that your attack on the sufficiency or admissibility of our evidence is either entirely premature or procedurally wronghealed. Assuming my presentation of such precedent to you, the same would be the basis of any Rule 11 Motion I might contemplate.

On the other hand, my client and/or his investigator may have or be willing to prepare an affidavit as to the nature of compensation between them and an explanation of how the same is either consistent or not with the discovery responses to which you refer. You provide no evidence of any response stating "well, we don't do that any more", so I wont respond directly to such a suggestion, except to note its disrespectfully perjorative tone. But in the event that such a document can and will be produced to you, the same would have to be presented with the strict understanding that we do not in any way concede your procedural right to the same

Exhibit X - 3

Gmail - Malibu Media ... o ... D. Md. ... 13-3024 ... Deposition ... http://mail.google.com/mail/u/0/?ui=2&ik=...23&ic6&view...

or any other information at this juncture of this or any other suit by my client regarding these matters. Our position remains - and must continue to be in all of these matters - that the role and function of internet subscribers and their counsel prior to the amendment of a Complaint and service of the same along with a Summons is to present themselves for deposition to determine whether such amendment and service will involve them. <mark>Under no circumstances will we consider the idea of making preliminary discovery in these cases a two-way street. It was not designed that way by the Court and for good reason.</mark>

Finally, your unsolicited and off-hand remarks regarding my state of mind are entirely out of line and unprofessional. You flatter yourself, sir, if you think you can inflict shock upon me or in any way disturb my calmness or peace of mind. And you falsely and disingenuously flatter me by asserting that I can change the objective nature of human relations by not "taking" something personally. Your final sentence raises your self-flattery to superhuman levels, asserting that your "concern" can somehow change an objective fact of human relations. Perhaps if you can somehow obtain the mystical power to change one or the other of us into something not defined as a "person" you can render interactions between us not "personal".

In conclusion, I can concur with the sentiment expressed in the next to last sentence of your e-mail. Until now, I had no cause to complain about our ability to work together in a professional manner. That was, of course, before you elected to poison the well of goodwill between us with frivolous, too-clever-by-half, procedural manipulations and attempts to prematurely begin the general litigation of this matter. I hope that such tactics on your part will cease and we will be able to return to the professional and procedurally proper resolution of these matters.

Very truly yours,

Jon A. Hoppe, Esquire
Maddox, Hoppe, Hoofnagle & Hafey, L.L.C.
1401 Mercantile Lane #105
Largo, Maryland 20774
(301) 341-2580 (ph.)
(301) 341-5727 (fax)

---

The information contained in this electronic message is attorney privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by telephone at the number printed above and return the original to the sender at the address printed above via electronic mail. Thank you.

---

**From:** morganpietz@gmail.com on behalf of Morgan E. Pietz
**Sent:** Mon 3/3/2014 5:02 PM
**To:** Jon Hoppe
**Cc:** John C. Lowe
**Subject:** Malibu Media - D. Md. - 13-3024 - Deposition and Discovery re IPP "Oral Contingency Agreement"

Exhibit X - 4

Gmail - Ma......d....... MCL D.... ab. ... hi.........         http://mail...................gui&ik=.....c6&view...

Case 8:14-cv-00874-CEH-AEP   Document 8-27   Filed 06/25/14   Page 6 of 11 PageID 389
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 236 of 270

[Quoted text hidden]

---

**Morgan E. Pietz** <mpietz@pietzlawfirm.com>                    Mon, Mar 3, 2014 at 6:16 PM
To: Jon Hoppe <JHoppe@mhhhlawfirm.com>
Cc: "John C. Lowe" <johnlowepc@johnlowepc.com>

Thanks, Jon.

Please send me something under oath, which details the full history of IPP and Fieser's compensation
arrangements, and explains the "oral contingency agreement" discovery response, and I will consider holding
off on a motion.  In terms of the kind of substantive answer which I consider insufficient, see Mr. Kotzker's
email attached as Exhibit C to the motion I sent you.

Best regards,
Morgan

[Quoted text hidden]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:13-cv-02394-WYD-MEH

MALIBU MEDIA, LLC,

Plaintiff,

v.

JEREMIAH BENSON,

Defendant.

_____

**DEFENDANT'S MOTION TO EXCLUDE TESTIMONY AND EVIDENCE FROM IPP
INTERNATIONAL UG AND TOBIAS FEISER**
_____

Defendant, Jeremiah Benson, through undersigned counsel, hereby moves for an order

excluding all testimony and evidence from IPP International UG and Tobias Feiser (collectively

"IPP"). Plaintiff also respectfully requests that, Plaintiff Malibu Media disclose all past and present

fee agreements between Plaintiff, its counsel and IPP. In support of the requests, Defendant states

as follows:

**BRIEF IN SUPPORT**

Plaintiff, Malibu Media ("Malibu") is a prolific copyright litigant. In the last three years

alone, Malibu has filed approximately 1773 copyright lawsuits nationwide, with 308 of those suits

being filed in this Court alone. In every instance, these lawsuits are supported by evidence provided

by the German firm IPP. (*See e.g.* Amended Complaint ¶¶ 16-17, 19-20; Exhibits A-B; Docket.

No. 16; *see also* Affidavit of Tobias Feiser in support of Motion for Leave to Take Early

Discovery; Dck. No. 7 Exhibit D.)  However, what has not disclosed to this, or any other Court is

that IPP is a financially interested party. Specifically, in each of the above referenced cases IPP

supplied evidence to Malibu pursuant to an "oral contingency agreement" with its national counsel

1

Exhibit X - 6

Keith Lipscomb, of the Miami based law firm Lipscomb, Eisenberg & Baker, P.L.  IPP's actions

as a contingent-fee witness are contrary to common law principles, public policy, the ABA Model

and Colorado Rules of Professional Conduct as well as the Federal Anti-Gratuity Statute.  For

these reasons, IPP should not be allowed to offer evidence or testimony in this case. In addition,

Malibu should be ordered to disclose to the Defendant, this Court, and any other court in which it

has filed a lawsuit using evidence provided by IPP, all past and present fee agreements between

Plaintiffs, its counsel and IPP for review and other appropriate judicial action.

## FACTUAL BACKGROUND

IPP is a German based company that provides services that involve the "track[ing] and

monitor[ing of] illegal propagators within [BitTorrent] networks."[1] Malibu's lawsuits are

supported by evidence provided by IPP, and in particular IPP employee Tobias Feiser. (*See e.g.*

Amended Complaint ¶¶ 16-17, 19-20; Exhibits A-B; *see also* Affidavit of Tobias Feiser in support

of Motion for Leave to Take Early Discovery; Dck. No. 7 Exhibit D.) In an identical copyright

infringement case in a separate jurisdiction Malibu, certified under penalty of perjury that IPP is

paid only based on a contingent of settlement proceeds. Specifically, Malibu admitted the

following:

> **Interrogatory No. 1**: Please identify all . . . business entities that have an interest,
> financially, or otherwise, in this litigation, including, . . . forensic consultants,
> and/or witnesses, . .. and specifically and in detail describe the nature of the interest.

> **Response to Interrogatory No. 1**: . . . IPP International UG, is a fact witness who
> will testify that its technology detected that a person using Defendant's IP address
> was downloading and distributing Plaintiff's copyrighted works. **Pursuant to an
> oral contingency fee agreement, IPP International UG is entitled to a small
> portion of the proceeds from the resolution of this case in consideration for the
> services it provides.**

---

[1] *See* www.ippint.de/index.php?option=com_content&view=article&id=3&Itemid=3 (accessed Jan. 29, 2014).

Exhibit X - 7

(*See* Exhibit A – Verified Response No. 1).  In response to an Interrogatory in another identical federal lawsuit, Malibu admitted that "[it] and IPP International UG have an oral agreement that was formed approximately 2.5 years ago "negotiated the terms of [Malibu]'s agreement with IPP." (Exhibit B – Verified Response No's. 4-5).  Again, Malibu admitted that that its national counsel M. Keith Lipscomb, of the Miami based law firm Lipscomb, Eisenberg & Baker, P.L "negotiated the terms of Plaintiff's agreement with IPP International UG" and that IPP is "entitled to a small portion of the proceeds from the resolution of this case in consideration for the services it provided." *Id*. Finally, Malibu has repeatedly identified in court filings that IPP is "a fact witness who will testify that its technology detected that a person using Defendant's IP address was downloading and distributing Plaintiff's copyrighted works."[2] (*See* Exhibit A – Verified Response No. 1).

In response to this information, Defendant's counsel sought clarification from Malibu's local counsel as to the Malibu's fee agreement with IPP. (Exhibit C) Malibu's response however was completely contrary to the above referenced statements provided under penalty of perjury by Malibu's representative Colette Field, and submitted by its counsel pursuant to F.R.C.P. 11. *Id*. Defendant's counsel sought additional assurances, such as a simple declaration from Mrs. Field for example, or even Mr. Lipscomb. *Id*. Malibu never responded to this request. More telling perhaps is the fact that despite being ordered by the Honorable Geraldine S. Brown of the U.S. District Court for the Northern District of Illinois to disclose the nature and terms of this "oral

---

[2] The reference to IPP's "technology" would indicate that it is not as much a fact witness as an expert witness. However, it is likely that such designation was applied to IPP so as to avoid the need for drafting an expert report under Fed. R. Civ. P. 26.

Exhibit X - 8

contingency agreement," Malibu has steadfastly refused and now stands under the threat of a

motion for show cause why it should not be held in contempt. (See Exhibit D).

## **LEGAL ARGUMENT**

## I.   ALL EVIDENCE FROM IPP SHOULD BE EXCLUDED

   a.   CONTINGENCY BASED COMPENSATION OF WITNESSES IS CONTRARY TO COMMON LAW
        PRINCIPLES, PUBLIC POLICY AND SUBJECT TO EXCLUSION

Relying on the common law and the court's authority to forestall violations of ethical

principles, many jurisdictions have held that testimony of witnesses whose compensation is

contingent upon the outcome of the case must be excluded. See, e.g., *United States v. Singleton*,

144 F.3d 1343, 1347 (10th Cir. 1998) (contracts to pay fact witnesses are void as violative of public

policy), vacated on other grounds, 165 F.3d 1297 (10th Cir.), cert. denied, 119 S. Ct. 2371 (1999);

*see also, Hamilton v. General Motors Corp.*, 490 F.2d 223, 228-229 (7th Cir. 1973) (holding that

paying fact witnesses for testimony is against public policy and refusing to allow payment for

testimony); *Followwill v. Merit Energy Co.*, 2005 WL 5988695, at *1 (D. Wyo. Apr. 11, 2005)

(granting defendants' motion to exclude plaintiffs' expert witness and strike his expert report

because the witness was paid on a contingency basis).[3]

---

[3] *See also Straughter v. Raymond*, 2011 U.S. Dist. LEXIS 53195, at *9-10 (C.D. Cal. May 9, 2011) (excluding expert witness compensated pursuant to a contingency fee); *see also e.g. Caldwell v. Cablevision Sys. Corp.*, 984 N.E.2d 909, 912, 960 N.Y.S.2d 711 (N.Y. 2013) ("What is not permitted and, in fact, is against public policy, is any agreement to pay a fact witness in exchange for favorable testimony, where such payment is contingent upon the success of a party to the litigation."); *Westin Tucson Hotel Co. v. State*, 936 P.2d 183, 190 (Ariz. App. 1997)("…a contract providing for compensation of a witness  contingent on the success of the litigation is subversive of public justice for the reason that his evidence may be improperly influenced. Public policy considerations brand such a contract illegal."), *In re Schapiro*, 128 N.Y.S. 852, 858 (N.Y. App. Div. 1911) ("A witness who . . . receives compensation or a promise of compensation for giving his testimony is necessarily a discredited witness."); *Reffett v. C. I. R.*, 39 T.C. 869, 878 (1963) ("[I]t seems to be a rather generally accepted rule that all agreements to pay witnesses extra compensation contingent on the success of the lawsuit are against public policy whether the agreement is with an ordinary witness, an expert witness, or a witness who cannot be compelled to testify, because such agreements constitute a direct temptation to commit perjury."). *Ouimet v. USAA Casualty Ins. Co.*, 2004 U.S. Dist. LEXIS 31199, 2004 WL 5865274, at *2 (C.D. Cal. Jul. 14, 2004) (excluding expert's testimony, in part, because it "would run directly afoul of [Rule 5-310 of the California Rules of Professional Conduct], as her compensation under the contingency fee agreement depends upon the outcome of the case."); *Farmer v. Ramsay*, 159 F. Supp. 2d 873, 883 (D. Md. 2001) (granting motion to strike reports of expert retained under contingency fee arrangement), aff'd on other grounds, 43 Fed. App'x 547 (4th Cir. 2002); *Cosgrove v. Sears Roebuck & Co.*, 1987 U.S. Dist. LEXIS 11696, 1987 WL 33595,

4

Exhibit X - 9

On the face of its discovery responses, Malibu admits under penalty of perjury that IPP is being paid on a contingent basis. (*See* Ex's A and B). IPP will make money only if this case is resolved positively for Malibu. Further, the amount of money IPP will make is contingent on the proceeds received in settlement or collected in judgment. Such an arrangement is contrary to public policy and common law principles that hold such agreements void on their face and an affront to the integrity of the judicial system by turning third parties into both a witness and a "de facto" financially interested Plaintiff. *See e.g. Commonwealth v. Miranda*, 458 Mass. 100, 934 N.E.2d 222, 229 n.15 (Mass. 2010) ("[c]ompensation to fact witnesses is said to violate the integrity of the judicial system, to undermine the proper administration of justice, and to be contrary to a witness's solemn and fundamental duty to tell the truth."). While the common law torts of maintenance no longer exist in Colorado, *Fastenau v. Engel*, 125 Colo. 119, 122 (Colo. 1952), such quasi barratrous and/or champertous financial arrangement should not be endorsed by this Court and evidence from IPP should be stricken from the record and excluded going forward.

  b.  CONTINGENCY BASED COMPENSATION OF WITNESSES VIOLATES THE RULES OF PROFESSIONAL CONDUCT

While an issue of apparent first impression in this District, some trial courts have precluded improperly paid witnesses because their payment violates ethical rules. See, e.g., *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 865 F. Supp. 1516, 1526 (S.D. Fla. 1994) (excluding fact witness as a sanction where lawyer "violated the very heart of the integrity of the justice system"). Moreover, model and state based ethical rules have long

---

at *1-2 (S.D.N.Y. Dec. 21, 1987) (precluding testimony of expert witness paid on contingency fee basis, but allowing party sixty days to designate new expert witness); *In re SMTC Mfg.*, 421 B.R. 251, 264 n.2 (W.D. Tex. Bankr. 2009) (noting prior dismissal of expert witness retained under contingency fee arrangement); *cf. Accrued Fin. Servs., Inc. v. Prime Retail, Inc.*, 298 F.3d 291, 300 (4th Cir. 2002) (holding that to the extent that employees of financial auditing company planned to testify as experts, company was improperly offering expert testimony for contingent fee in violation of public policy).

Exhibit X - 10