# EXHIBIT Z

Case 1:13-cv-02394-WYD-MEH   Document 32   Filed 03/20/14   USDC Colorado   Page 1 of 16
Case 8:14-cv-00874-CEH-AEP   Document 8-29   Filed 06/25/14   Page 2 of 27 PageID 347
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 245 of 270

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:13-cv-02394-WYD-MEH

MALIBU MEDIA, LLC,

      Plaintiff,

v.

JEREMIAH BENSON,

      Defendant.

_____/

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION
TO EXCLUDE TESTIMONY AND EVIDENCE FROM IPP INTERNATIONAL UG
AND TOBIAS FEISER [CM/ECF23]**

Exhibit Z - 1

Case 1:13-cv-02394-WYD-MEH   Document 32   Filed 03/20/14   USDC Colorado   Page 2 of 16
Case 8:14-cv-00874-CEH-AEP   Document 8-29   Filed 06/25/14   Page 3 of 27 PageID 348
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 246 of 270

## I.   INTRODUCTION

Defendant's Motion to Exclude Testimony and Evidence from IPP international UG and Tobias Fieser (CM/ECF 27) ("the Motion") correctly asserts that Malibu Media, LLC ("Malibu") paid IPP International UG ("IPP"), for its data collection services.  From these facts, Defendant erroneously argues that the physical evidence obtained by IPP is inadmissible and that IPP's employee should be precluded from testifying.  While not titled as such, it is a Motion *in Limine* seeking to exclude relevant evidence and testimony.  Paying a service provider to record a computer is not a basis under the Federal Rules of Evidence to exclude relevant evidence and testimony.

## II.   FACTUAL BACKGROUND

A.   The Data Evidencing The Infringement Is *Not* Capable of Being Manipulated By Humans

Defendant's entire argument is premised on the possibility of witness bias based upon Malibu's payment for IPP's services.  As explained below, the evidence that Malibu uses for purposes of proving infringement occurred is *recorded* in such way that it is *not* capable of being manipulated or altered.  Humans play no part in the creation or storage of the evidence.  Significantly, the evidence can be independently verified by anyone – including Defendant.  Indeed, in preparation of this response, Plaintiff independently verified that the evidence is correct.  Consequently, there is no possibility of biased testimony.  The fact section explains why this paragraph is true.

1.   A Very Short Explanation of How BitTorrent Works

To understand the evidence upon which Plaintiff relies, there are two important things to address about the way BitTorrent works: (a) peers in a BitTorrent swarm connect to each other's computers in order to transmit "pieces" of a computer file (here, the computer files transmitted

1

Case 1:13-cv-02394-WYD-MEH   Document 32   Filed 03/20/14   USDC Colorado   Page 3 of 16
Case 8:14-cv-00874-CEH-AEP   Document 8-29   Filed 06/25/14   Page 4 of 27 PageID 349
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 247 of 270

contain copies of Plaintiff's works); and (b) every "piece" of the computer file – and the entire computer file – being transmitted via BitTorrent has its own *unique* hash value.   Hash values are digital fingerprints for pieces of data.[1]   Hash values are more reliable than DNA evidence.   *See* FN1.  A hash value is calculated.   Regardless of who calculates the hash value of any certain piece of data, the hash value for that certain piece of data will always be the same.[2]

## 2.   A 10,000 Foot Overview of the Data Collection System Used By IPP

The data collection system used by IPP has numerous components.   It contains, *inter alia*: (1) a proprietary BitTorrent Client[3]; (2) servers running a MySQL database which log verified infringing transactions; (3) packet analyzers, also known as packet sniffers, which create and analyze PCAPs; (4) servers that run the proprietary BitTorrent Client and record PCAPs; (5) WORM ("Write Once Read Many") tape drives for storing the PCAPs and MySQL server data; (6) a program to synchronize the servers' clocks with both a GPS clock and an atom clock[4]; (7) a proprietary program for checking the MySQL log files against the contents of the PCAPs; and (8) a proprietary program which checks the information contained in an Excel Spreadsheet

---

[1] See Exhibit A, citing numerous district and appellate court decisions describing hash values and finding that they are reliable unique identifiers for data akin to digital fingerprints.

[2] *See* Composite Exhibit B, which is an article explaining that hash values can be calculated and websites advertising commercially available free hash calculators.

[3] In other words, a software program that enables the BitTorrent protocol to work.  The BitTorrent Client used by Excipio is not commercially available and its code is a trade secret.  Patzer, at ¶ 6.  It was written to overcome the unique challenges of entering into a massive number of BitTorrent transactions with a massive number of people without distributing data.  *Id.*, at ¶ 7.

[4] If the servers are not synchronized with both the GPS clock and atom clock to within one hundredth of a second the infringing transaction is not logged but instead disregarded.  Patzer, at ¶ 8.

[2] See Composite Exhibit B, which is an article explaining that hash values can be calculated and websites advertising commercially available free hash calculators," at paragraph 2.

[3] In other words, a Wikipedia Article on BitTorrent enables the BitTorrent protocol to work.  The BitTorrent Client used by Excipio is Wikipedia Article on a Packet Analyzer code is a trade secret.  Patzer, at ¶ 6.  It was written to overcome the unique challenges of entering into a massive number of BitTorrent transactions with a massive number of people without distributing data.  *Id.*, at ¶ 7.

[4] If the servers are not synchronized with both the GPS clock and atom clock to within one hundredth of a second the infringing transaction is not logged but instead disregarded.  Patzer, at ¶ 8.

Case 1:13-cv-02394-WYD-MEH   Document 32   Filed 03/20/14   USDC Colorado   Page 4 of 16
Case 8:14-cv-00874-CEH-AEP   Document 8-29   Filed 06/25/14   Page 5 of 27 PageID 350
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 248 of 270

against what is in the PCAPs and server's log files.  *See* Patzer Declaration, at ¶ 5, Exhibit K;

and Exhibit C, Mr. Fieser's testimony during the Bellwether Trial transcript at p. 100.

### 3. The Evidence Produced By the Data Collection System Is Independently Verifiable

The *evidence* that the data collection system produces is comprised of PCAP computer

files and MySQL server log files.  Each entry on the MySQL log file correlates to a specific

PCAP file.  Patzer, at ¶ 9.

### a. PCAP Computer Files Are Independently Variable

Data sent through the internet is delivered in the form of "packets" of information.[5]

PCAP stands for "Packet Capture."  A PCAP is a computer file containing captured or recorded

data being transmitted between two computers.[6]  A "Packet Analyzer" records packets of data

being transmitted between two computers over a network, such as the internet, and saves it in a

computer file called a PCAP.[7]  Packet analyzers also enable users to read and analyze PCAPs.

IPP's data collection system uses a proprietary packet analyzer *and* TCPDump to record the

*entire* infringing transaction.  TCPDump is an open source free packet analyzer.[8]

### (i) Anyone Who Downloads TCPDump – For Free – Can Review and Verify the Infringing Transaction

*Anyone* who downloads TCPDump – for free – can review and verify the entire

transmission of a piece of Malibu's copyrighted work from Defendant's IP address.   The proof

of infringement is a PCAP *recording* of Defendant's IP Address *sending* a piece of the

copyrighted work to the MySQL server.  The PCAP recording speaks for itself.   Testimony

---

[5] *See* Exhibit D, Wikipedia Article on "Internet Protocol," at paragraph 2.
[6] *See* Exhibit E, Wikipedia Article on "PCAP."
[7] *See* Exhibit F, Wikipedia Article on "Packet Analyzer."
[8] http://www.tcpdump.org/#

Case 1:13-cv-02394-WYD-MEH   Document 32   Filed 03/20/14   USDC Colorado   Page 5 of 16
Case 8:14-cv-00874-CEH-AEP   Document 8-29   Filed 06/25/14   Page 6 of 27 PageID 351
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 249 of 270

about what is contained in the PCAP can be elicited at trial by either IPP's employee, Mr. Fieser, Malibu's computer forensic expert Mr. Patrick Paige, Excipio's independent contractor, Mr. Michael Patzer, or via a demonstration during trial by any other witness. The demonstration would merely require the witness to install TCPDump so that he or she could read and analyze the PCAP. Here, in preparation of its response to this motion, Plaintiff's attorneys asked Michael Patzer, an individual who does not work for IPP, to examine the evidence, without compensation. Mr. Patzer independently reviewed the PCAPs in this case and confirmed that the PCAPS recorded Defendant's IP address infringing Plaintiff's copyrighted works at the exact Hit Dates and UTC times listed on Exhibit A to Plaintiff's Complaint. Patzer, at ¶ 13.

### b. Every Entry Onto the MySQL Server Log File Correlates To a PCAP

Defendant sent the investigative server numerous "pieces" of each one of the computer files that contain a copy of Malibu's works. Accordingly, TCPDump recorded numerous BitTorrent transactions for each infringing computer file. *See* Exhibit G. Each one of these transactions was logged in a MySQL log file *and* fully recorded as a PCAP. Significantly, every entry on the MySQL server log file correlates to a specific PCAP. Patzer, at ¶ 9. Both the MySQL log file and the PCAP are computer records.

### 4. The PCAP and Log Files Are Saved on an Uneditable WORM ("Write Once Read Many") Tape Drive

"Write once read many (WORM) describes a data storage device in which information, once written, cannot be modified. This write protection affords the assurance that the data cannot be tampered with once it is written to the device."[9] Both the PCAPs and log files are saved onto WORM tape drives. Patzer, at ¶ 10. There is no possibility that the information on these WORM drives can be edited. *Id.,* at ¶ 11. Further, each of the WORM tape drives is

---

[9] *See* Exhibit H, Wikipedia article entitled "Write once read many."

Case 1:13-cv-02394-WYD-MEH   Document 32   Filed 03/20/14   USDC Colorado   Page 6 of 16
Case 8:14-cv-00874-CEH-AEP   Document 8-29   Filed 06/25/14   Page 7 of 27 PageID 352
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 250 of 270

electronically stamped with a German government issued time stamp at least every twenty four

hours.  *Id.,* at ¶ 12.



PCAP CREATION AND STORAGE FLOW-CHART

Exhibit Z - 6

Case 1:13-cv-02394-WYD-MEH   Document 32   Filed 03/20/14   USDC Colorado   Page 7 of 16
Case 8:14-cv-00874-CEH-AEP   Document 8-29   Filed 06/25/14   Page 8 of 27 PageID 353
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 251 of 270

B.     A Short Summary of Mr. Fieser's Possible Testimony

Mr. Fieser is the only employee of IPP who *may* testify.  His testimony is unnecessary.

Therefore, Malibu will *not* likely call Mr. Fieser.  What follows is a short summary of what Mr.

Fieser would say if Malibu calls him.

Tobias Fieser is a salaried employee of IPP.  Fieser Declaration, at ¶ 4, Exhibit L.  He

does not have an ownership interest in IPP nor any other entity involved in or affiliated with

IPP's data collection system.  *Id.*, at ¶ 6.  Mr. Fieser is not being paid for his testimony and does

not have the right to receive any portion of a settlement or judgment in Plaintiff's favor.[10]  *Id.,* at

¶ 7.

Mr. Fieser has three primary functions at IPP: (1) verify that the BitTorrent computer

files as evidenced by their unique hash values are copies of the original works; (2) extract the

MySQL server data and make it available to IPP's clients, here Malibu's counsel; and (3) upload

a declaration prepared by IPP's clients' counsel (in this case Malibu's attorney) into a computer

program and sign a declaration if a green light appears.[11]  *See* Exhibit C, Mr. Fieser's testimony

during the Bellwether Trial transcript at pp. 92, 100.  The computer program verifies the attested

to infringement data is contained in the servers' MySQL log files.  This ensures it has not been

altered by counsel during the suit formation process.  *Id.*

1.   Mr. Fieser Does Not Need to Testify That the Computer Files Transmitted Via
     BitTorrent Are Copies Because Anyone Can Do That

---

[10] Malibu would reimburse IPP for Mr. Fieser's travel and lodging costs and pay IPP a reasonable flat
daily rate fee for Mr. Fieser's time away from work.

[11] Each month approximately 80,000 U.S. citizens infringe Malibu's copyrighted works.  Malibu's
counsel culls through this infringement data received by IPP and sues 100-150 of the worst-of-the-worst
infringers.  To identify potential defendants, Malibu's counsel analyzes various things such as length of
infringement, number of infringed works, and evidence of third party infringements the content of which
can be used to identify a specific person.  After using IPP's infringement data counsel sends it back as
formatted declarations.

Case 1:13-cv-02394-WYD-MEH   Document 32   Filed 03/20/14   USDC Colorado   Page 8 of 16
Case 8:14-cv-00874-CEH-AEP   Document 8-29   Filed 06/25/14   Page 9 of 27 PageID 354
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 252 of 270

Mr. Fieser does not need to testify that the computer files transmitted via BitTorrent are copies of Malibu's movies.  To explain, the computer files have *unique* cryptographic hash values and are playable movie files.  Accordingly, anyone can watch the BitTorrent computer file copy and compare it to the original for purposes of ascertaining whether it is a copy.  For this reason, in all other recent matters around the country which have approached trial, opposing counsel has stipulated that the computer files contain copies.  If opposing counsel will not so stipulate then Malibu will ask this Court to take judicial notice.  Judicial notice is appropriate under rule Fed. R. Evid. 201(b) because it is "a fact that is not subject to reasonable dispute [and] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  A stipulation or judicial notice is particularly appropriate because the movies contain adult content.  Consequently, it may be uncomfortable or distracting for jurors to watch them.  Nevertheless, in the absence of a stipulation or judicial notice, Malibu could have Patrick Paige, its expert witness, Plaintiff's principle, or Mr. Patzer calculate the hash values of the subject computer files at or before trial and play the copy and original in a split screen. This proves A is a copy of B.

2. <u>Mr. Fieser is Not the Witness Malibu Will Call to Authenticate the Infringement Data at Trial or to Lay the Foundation For its Introduction</u>

At trial, Malibu will call Mr. Patzer to testify that the PCAPs and MySQL log files contain evidence that proves that an infringement was committed by a person using Defendant's IP Address.  Malibu will not use Mr. Fieser for this purpose because he will not be able to establish the chain of custody to the PCAP.  To explain, Mr. Patzer, not Mr. Fieser, restores the PCAPs saved onto the WORM tape drives and makes forensically sound copies of them for use at trial.  Thus, only Mr. Patzer can testify to the chain of custody.

Case 1:13-cv-02394-WYD-MEH Document 32 Filed 03/20/14 USDC Colorado Page 9 of 16
Case 8:14-cv-00874-CEH-AEP Document 8-29 Filed 06/25/14 Page 10 of 27 PageID 355
Case 1:14-cv-00263-RDB Document 10-1 Filed 03/28/14 Page 253 of 270

C.     A Very Short Explanation of Michael Patzer's Anticipated Testimony

Michael Patzer works as an independent contractor predominantly for Excipio GmbH, a

German company.  Patzer, at ¶ 2.  Excipio contracts with IPP to provide IPP with the data

collection system that IPP uses to detect infringement of Malibu's works.[12]  *Id.*, at ¶ 4.  Mr.

Patzer designed, implemented, maintains and monitors the data collection system that Excipio

both owns and uses to identify the IP addresses used by people to commit copyright infringement

via the BitTorrent protocol.  *Id.*, at ¶ 3.  *See also* Exhibit I, Mr. Patzer's testimony during the

Bellwether Trial transcript at p. 54.  No one at Excipio has an ownership in IPP or vice versa.

*Id.*, at ¶ 14.  Mr. Patzer does not have an ownership interest in Excipio.  *Id.,* at ¶ 15.  He is not

paid for his testimony and is not entitled to any portion of any money received from a settlement

or judgment in Malibu's favor.[13]  *Id.,* at ¶ 16.  Malibu has never paid Excipio or Mr. Patzer

anything.  *Id.,* at ¶ 16.

Mr. Patzer will answer all of the questions necessary to lay the foundation for the

introduction into evidence of the PCAP and MySQL log files as business records within the

meaning of Fed. R. Evid. 803(6).  Further, he will answer all of the questions necessary to

authenticate the PCAP and MySQL log files pursuant to Fed. R. Evid. 901(a).  Finally, Mr.

Patzer will testify that the PCAPs are recordings of computer transactions during which a person

using IP Address 76.25.62.43 sent pieces of the infringing computer files to the servers that he

personally maintains and monitors.

---

[12] IPP used to maintain and operate and use its own system.  At some time unknown to Malibu, but well
in advance of any of the infringement that was logged in this case, IPP entered into a license agreement
with Excipio to use its system.  The two companies now both compete with each other and are licensor-
licensee. Under this arrangement, IPP licenses the use of Excipio's system and servers.  Patzer, at ¶ 3.
IPP adds value and distinguishes itself by, *inter alia*, customer specific analysis tools and its client
service.
[13] Malibu does intend to reimburse Excipio for Mr. Patzer's travel and lodging cost and pay a reasonable
flat daily rate fee for Mr. Patzer's time away from work.

Case 1:13-cv-02394-WYD-MEH   Document 32   Filed 03/20/14   USDC Colorado   Page 10 of 16
Case 8:14-cv-00874-CEH-AEP   Document 8-29   Filed 06/25/14   Page 11 of 27 PageID 356
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 254 of 270

D.     Patrick Paige Tested the Data Collection System

Malibu's computer forensic expert, Patrick Paige, tested the data collection system.  His report is attached as Exhibit J.  His test involved seeding public domain movies, i.e. movies that are not protected by copyright.  *See* Exhibit J.  He gave IPP the titles of the works.  *Id.*  IPP, using Excipio's system, found the works and entered into BitTorrent transactions with Mr. Paige's test servers.  *Id.*  Mr. Paige used a packet analyzer on his test servers to record all of the transactions in PCAPs.  *Id.*  He compared the PCAPs he recorded during the transactions with the PCAPs that were recorded by IPP using Excipio's system.  *Id.*  They matched perfectly.  *Id.* This could not happen unless Excipio's system accurately created PCAPs of transactions.  *Id.*

E.     Judge Baylson Found the Data Collection System Was Valid

Judge Baylson presided over the Bellwether trial wherein Malibu was the first ever Plaintiff to try a BitTorrent copyright infringement case.  At the trial, Judge Baylson had an independent court appointed computer expert in attendance.  After the trial, Judge Baylson found that IPP's data collection system "is valid."  *See Malibu Media, LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d 779, 782 (E.D. Pa. 2013) ("Malibu [] expended considerable effort and expense to determine the IP addresses of the infringing parties, and the technology employed by its consultants . . . was valid.")

F.     Defendant Can Retain An Expert to Test the Data Collection System

Defendant has the right to hire an expert to test the data collection system.  Defendant has chosen instead to attack the data collection system based upon unfounded speculation about the potential for biased testimony.  Defendant's attack does not specify how the system may be flawed or how testimony that merely reads computer records can be biased.  This is no surprise because there is no possibility for biased testimony.

9

Case 1:13-cv-02394-WYD-MEH   Document 32   Filed 03/20/14   USDC Colorado   Page 11 of 16
Case 8:14-cv-00874-CEH-AEP   Document 8-29   Filed 06/25/14   Page 12 of 27 PageID 357
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 255 of 270

G.  Malibu and IPP Have a Written Fixed Fee Agreement

Malibu and IPP have a written fixed fee agreement pursuant to which Malibu pays IPP for providing the service of collecting data about infringements.  Field, at ¶ 8.  IPP has not been paid anything for this case.  Fieser, at ¶ 10.  Malibu's prior oral agreement with IPP to pay IPP a small portion of the amount received from a settlement or judgment from Malibu's litigation does not apply to this case.  Field, at ¶ 7.  Malibu has never paid *any* fact witness to testify in this case or any other case.  *Id.*, at ¶ 9.[14]

## III.  ARGUMENT

A.  Malibu is Permitted to Pay For Data Collection Services

Malibu has not paid nor offered to pay any individual for testimony.  The fee Malibu pays IPP is for data collection services.  Paying IPP for data collection services is neither unethical nor prohibited by law.  "[P]arties are free to pay individuals, including fact witnesses, for providing information and assisting with litigation, so long as the payment is not for their testimony."  *Armenian Assembly of Am., Inc. v. Cafesjian*, 924 F. Supp. 2d 183, 194 (D.D.C. 2013).  "[T]his Court is unaware of any authority that interprets Rule 4-3.4(b) as barring counsel from compensating someone for their efforts in collecting evidence."  *Platypus Wear, Inc. v. Horizonte Fabricacao Distribuicao Importacao Exportacao Ltda*, 2010 WL 625356 (S.D. Fla. 2010).  "[T]he court concludes that [defendant] and its counsel paid [the witness] only for time spent in connection with the litigation process."  *Centennial Mgmt. Servs., Inc. v. Axa Re Vie*, 193 F.R.D. 671, 679 (D. Kan. 2000).  "Anyone has a right, when threatened with litigation, or desiring himself to sue, to employ assistance with a view of ascertaining facts as they exist, and to hunt up and procure the presence of witnesses who know of facts and will testify to them."  *Hare v. McGue*, 178 Cal. 740, 742, 174 P. 663, 664 (1918).  At significant expense, IPP provides

---

[14] Malibu pays Mr. Paige, an expert, an hourly rate to prepare for and appear at legal proceedings.

Case 1:13-cv-02394-WYD-MEH   Document 32   Filed 03/20/14   USDC Colorado   Page 12 of 16
Case 8:14-cv-00874-CEH-AEP   Document 8-29   Filed 06/25/14   Page 13 of 27 PageID 358
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 256 of 270

Malibu with labor and a data collection service.  Malibu Media is permitted to pay IPP for its service.

B.    No Witness Has Ever Been Paid For Testimony Much Less on a Contingent Basis

Defendant erroneously conflates Malibu's proper payment to IPP for its data collection services with the false allegation that Malibu paid Tobias Fieser for testimony.  Mr. Fieser is a salaried non-equity owning employee of IPP.  Fieser, at ¶¶ 4, 7.  Malibu has never paid nor offered to pay Mr. Fieser anything.  *Id.*, at ¶ 11.  When, as here, "[i]t is clear that the [individual] himself, as a witness, is not eligible to receive compensation for his testimony . . . [the] case does not even involve the payment of a fee to a witness."  *People v. McNeill*, 316 Ill. App. 3d 304, 306, 736 N.E.2d 703, 705 (Ill. App. Ct. 2000).   In *McNeil,* the witness's employer's compensation was contingent on the outcome of the case.  Like here, however, the witness was not paid for his testimony.  The *McNeil* Court refused to exclude the witness and opined that the defendant could always attempt to impeach the witness's credibility on the basis that his employer had a contingent interest in the case.

C.    Even if Malibu Had Paid a Witness on a Contingency That Witness's Testimony
        Should Not be Excluded

"The *per se* exclusion of whole categories of evidence is disfavored by the Federal Rules of Evidence.  It is a fundamental tenet of those rules that, with few exceptions, 'all relevant evidence is admissible,' Fed. R. Evid. 402, and 'every person is competent to be a witness,' Fed. R. Evid. 601."  *U.S. v. Cervantes-Pacheco*, 826 F.2d 310, 315 (5th Cir. 1987) (refusing to prevent the federal government's confidential informant from testifying even though the federal government had offered the confidential informant *contingent* compensation for his testimony.) Notably absent from Fed. R. Evid. 402 and 601 is that a witness be disinterested or uncompensated in order to be permitted to testify.

11

Case 1:13-cv-02394-WYD-MEH   Document 32   Filed 03/20/14   USDC Colorado   Page 13 of 16
Case 8:14-cv-00874-CEH-AEP   Document 8-29   Filed 06/25/14   Page 14 of 27 PageID 359
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 257 of 270

Consistent with the foregoing, "the 'assumption that interested witnesses necessarily lie or that disqualification is the best way to deal with the threat of perjury' has been rejected." *Just In Case Bus. Lighthouse, LLC v. Murray*, 2013 COA 112, (Colo. App. 2013) citing 27 Charles A. Wright & Victor J. Gold, *Federal Practice & Procedure* § 6005, at 69 (2007).   The court in *Just in Case Bus. Lighthouse* also noted that "under CRE 601, per se exclusion of testimony is disfavored", "the potentially corrupting effect of contingent compensation implicates credibility, but does not involve competency" and "questions relating to the credibility of a witness and the weight to be accorded the testimony of a witness are matters to be resolved solely by the jury". *Id*. at *4-*5.

Here, there has been no bad faith by Plaintiff or Plaintiff's counsel.   Defendant's motion relies on incidents that happened outside this case.   Further, Plaintiff's counsel has informed undersigned that all of the discovery regarding this issue was provided to opposing counsel in the case in the Northern District of Illinois before the Honorable Judge Brown.  *See* CM/EF 23 at *3. Finally, even if Plaintiff's agreement with IPP was improper, *which it is not*, it does not violate Colorado Rule of Professional Conduct 3.4(b) because undersigned did not negotiate the agreement and IPP has not been paid anything for this case.

D.      Malibu Did Not Violate the Federal Anti-Gratuity Statute But Even if it Had That Would Not Be a Basis For Excluding Evidence or Testimony

Defendant's assertion that Malibu violated 18 U.S.C. § 201(c)(2) – which prohibits knowingly paying a person to testify – is  baseless.  First, Plaintiff has an agreement to pay IPP for its data collection efforts.   It does not pay Mr. Fieser nor does it pay IPP for Mr. Fieser's testimony. *Centennial Mgmt. Servs., Inc. v. Axa Re Vie*, 193 F.R.D. 671, 681 (D. Kan. 2000) ("the court has concluded, based on the evidence before it, that neither [defendant] nor its counsel paid money to [witness] 'for' or 'because of' his testimony. Accordingly, the court must

12

Case 1:13-cv-02394-WYD-MEH   Document 32   Filed 03/20/14   USDC Colorado   Page 14 of 16
Case 8:14-cv-00874-CEH-AEP   Document 8-29   Filed 06/25/14   Page 15 of 27 PageID 360
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 258 of 270

conclude that no violation of section 201(c)(2) occurred." Second, Mr. Fieser's testimony is truthful. Therefore, 18 U.S.C. § 201(c)(2) does not apply. *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 865 F. Supp. 1516, 1524 (S.D. Fla. 1994) ("Because there is no evidence in the record that the testimony elicited through [Defendant's] monetary inducements was false testimony, the Court concludes that the evidence does not support a violation of § 201(c)(2).")

Third, and most significantly here, 18 U.S.C. § 201 is a criminal statute *not* an evidentiary rule of exclusion. Indeed, even if testimony is proffered which violates 18 U.S.C. § 201(c)(2) the testimony should not be excluded under Fed. R. Evid. 403 or any other rule because "exclusion confers windfalls on the guilty," and "a jury should be competent to discount appropriately testimony given under a powerful inducement to lie." *United States v. Dawson*, 425 F.3d 389, 394 (7th Cir. 2005).

E. Malibu's Motion for Leave Did Not Violate Colorado Rule of Professional Conduct 3.3(d)

Defendant erroneously argues that undersigned violated the Colorado Rules of Professional Conduct because "Malibu plainly knew that its fee arrangement with IPP could subject the evidence to exclusion, or at a minimum increased scrutiny into its credibility." CM/ECF 23, at p. 11. Defendant further states that "Malibu failed to disclose that IPP was and is being illegally and/or unethically compensated. Even if such testimony were not excluded out of hand, this Court should have at least had the opportunity to judge the credibility and weight of the evidence prior to its grant of early discovery." *Id.*

"The object of an ex parte proceeding is [] to yield a substantially just result." Colo RPC 3.3 (2012), at Comment 14. This is accomplished by an attorney's duty to "make disclosures of material facts known to the lawyer and that the lawyer reasonably believes are necessary to an

Case 1:13-cv-02394-WYD-MEH   Document 32   Filed 03/20/14   USDC Colorado   Page 15 of 16
Case 8:14-cv-00874-CEH-AEP   Document 8-29   Filed 06/25/14   Page 16 of 27 PageID 361
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 259 of 270

informed decision." *Id.* Here, the Court's only decision with regard to Plaintiff's ex parte

motion, was limited to whether or not Plaintiff had demonstrated that "good cause" existed for it

to serve early discovery on Defendant's ISP to uncover Defendant's identity. The good cause

standard examines: (1) whether the plaintiff made a prima facie showing of a claim of copyright

infringement, (2) whether the plaintiff submitted a specific discovery request, (3) whether there

is an absence of alternative means to obtain the subpoenaed information, (4) whether there is a

central need for the subpoenaed information, and (5) the defendant's expectation of privacy. *See*

CM/ECF 7-1, at p. 4. Significantly, this Court found that Plaintiff satisfied the above factors.

*See* CM/ECF 10, at p. 2 ("After review of the motion, the Court finds that Plaintiff establishes

good cause for limited expedited discovery.") The weight and credibility of the evidence that

Plaintiff may use to prove its case is not relevant to the good cause standard. To the contrary,

this Court and numerous others have previously examined many similar motions by this Plaintiff

and none has ever found it necessary or appropriate to examine the evidence or its credibility

prior to allowing early discovery.[15] Regardless, as explained herein, Plaintiff's evidence is sound

and immune to bias because of the numerous steps and safeguards involved.

No unjust result came about from Plaintiff's ex parte motion. Defendant has not argued

to the contrary. The only result was that Plaintiff was allowed to serve its subpoena on

Defendant's ISP. Defendant's interests were adequately protected by his ability to move to

---

[15] In a similar BitTorrent copyright infringement case brought by this Plaintiff in the Western District of Michigan a defendant attempted to assert a similar argument under Michigan Rule of Professional Conduct 3.3(d), which is identical to the Colorado Rule. There the defendant included three pages of "disclosures" which he believed Plaintiff should have disclosed to the court in its ex parte motion for early discovery. Similar to here, many of the "disclosures" related to Plaintiff's evidence and ability to prove its case. Rejecting the defendant's argument, the court held that it was "unconvinced that omission of those statements violated Rule 3.3(d). The Court has previously scrutinized Plaintiff's subpoena request and determined that Plaintiff has established 'good cause' . . . with 'good cause' shown, such a process is necessary for a copyright holder to protect its copyright when BitTorrent protocol is the alleged method of infringement." *Malibu Media, LLC v. Doe*, 1:13-cv-00893-RJJ, CM/ECF 15, at p. 2 (W.D. Mich. October 28, 2013).

Case 1:13-cv-02394-WYD-MEH   Document 32   Filed 03/20/14   USDC Colorado   Page 16 of 16
Case 8:14-cv-00874-CEH-AEP   Document 8-29   Filed 06/25/14   Page 17 of 27 PageID 362
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 260 of 270

quash the subpoena, which he did not do in this case.  There was no need for the Court to weigh

the credibility of the evidence prior to granting Plaintiff's Motion.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied in its entirety.

Dated:  March 20, 2014

Respectfully submitted,

By: /s/ *Jason Kotzker*
Jason Kotzker
jason@klgip.com
KOTZKER LAW GROUP
9609 S. University Blvd. #634132
Highlands Ranch, CO 80163
Phone: 720.330.8329
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: /s/ *Jason Kotzker*

Case 1:13-cv-02394-WYD-MEH   Document 32-10   Filed 03/20/14   USDC Colorado   Page 1 of 5
Case 8:14-cv-00874-CEH-AEP   Document 8-29   Filed 06/25/14   Page 18 of 27 PageID 363
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 261 of 270

## DECLARATION OF PATRICK PAIGE

**I, PATRICK PAIGE, DO HEREBY DECLARE:**

1.      I am over the age of eighteen (18) and otherwise competent to make this declaration.  The facts stated in this declaration are based upon my personal knowledge.

2.       I was a police officer from 1989 until 2011 for the Palm Beach County Sherriff's Department.  And, from 2000-2011, I was a detective in the computer crimes unit.

3.      As a detective in the computer crimes unit, I investigated internet child pornography and computer crime cases.

4.      I have conducted forensic computer examinations for:

      (a)      Broward County Sheriff's Office (BSO);

      (b)      Federal Bureau of Investigation (FBI);

      (c)      U.S. Customs and Border Protection (CBP);

      (d)      Florida Department of Law Enforcement (FDLE);

      (e)      U.S. Secret Service;

      (f)      Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF); and

      (g)      Various municipalities in the jurisdiction of Palm Beach County.

5.      I was also previously assigned to a police unit working in conjunction with TLO Corp., which is a private company.

6.      When I worked with TLO Corp., I supervised the other detectives assigned to the unit, which was consisted of six online investigators and two computer forensic examiners.

7.      I am familiar with software programs used to investigate computers, including EnCase and Access Data.

Case 1:13-cv-02394-WYD-MEH   Document 32-10   Filed 03/20/14   USDC Colorado   Page 2 of 5
Case 8:14-cv-00874-CEH-AEP   Document 8-29   Filed 06/25/14   Page 19 of 27 PageID 364
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 262 of 270

8.      I have taken over 400 hours of courses designed to teach people how to investigate computers.

9.      Also, while working from 2003-2011 for Guidance Software, the makers of EnCase, I have taught over 375 hours of courses in computer forensics ranging from beginner to advanced levels.

10.     I have had students in my courses from various government branches, including: (a) sheriff's offices; (b) FBI agents; (c) ATF agents; (d) agents from the Central Intelligence Agency, and (e) individuals from other branches of government and the private sector.

11.     After leaving the Palm Beach County Sherriff's office, I founded Computer Forensics, LLC, where I am currently employed.

12.     I have received the following awards and commendations:

(a)     1991 – Deputy of the Year, awarded by the 100 Men's Club of Boca Raton & Rotary Club.

(b)     1997 – Deputy of the Month for June.

(c)     2001 – Detective of the Month for October.

(d)     2002 – Outstanding Law Enforcement Officer of the Year, awarded by the United States Justice Department for work in the *U.S. vs. Jerrold Levy* case.

(e)     2003 – U.S. Customs Service Unit Commendation Citation Award for computer forensic work in Operation Hamlet.  Operation Hamlet was one of the largest rings in the history of U.S. Customs of individuals who were molesting their own children, and transmitting the images and video via the Internet.

(f)     2005 – Detective of the Month for December.

(g)     2007 – Outstanding Law Enforcement Officer of the Year, awarded by the United States Justice Department for work in the *U.S. vs. Jimmy Oliver* case.

(h)     2008 – Letter of Commendation issued by the FBI for outstanding computer forensic work in the *U.S. vs. Frank Grasso* case.

2

Case 1:13-cv-02394-WYD-MEH   Document 32-10   Filed 03/20/14   USDC Colorado   Page 3 of 5
Case 8:14-cv-00874-CEH-AEP   Document 8-29   Filed 06/25/14   Page 20 of 27 PageID 365
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 263 of 270

13.     I have been called to testify as a fact and expert witness on numerous occasions in the field of computer forensics in both trial-level and appellate proceedings before state, federal, and military courts in Florida, California, New Jersey, and New York.

14.     No court has ever refused to accept my testimony on the basis that I was not an expert in computer forensics.  My skill set and my reputation are my most important assets in my current position with Computer Forensics, LLC.

15.     With regard to my experience investigating child pornography cases, I supervised police officers whose responsibility it was to establish a successful TCP/IP connection with persons who were sending pornographic images of children or other illegal content over the Internet.

16.     The offenders' IP addresses, as well as the dates and times of the illegal transmission were recorded.

17.     An officer would then request that the assistant state attorney subpoena the corresponding ISPs for the purpose of identifying the subscribers that were transmitting the illegal content.

18.     In these cases, the subscribers were not notified by the ISPs that their identity was being subpoenaed because they could have deleted the images and destroyed the data.

19.     After receiving the subscribers' identities, we would prepare a search warrant that would authorize us to enter the subscribers' dwelling and seize all of their computer devices.

20.     I was directly involved in approximately 200 search warrants either by way of managing the process or performing it personally.

Case 1:13-cv-02394-WYD-MEH   Document 32-10   Filed 03/20/14   USDC Colorado   Page 4 of 5
Case 8:14-cv-00874-CEH-AEP   Document 8-29   Filed 06/25/14   Page 21 of 27 PageID 366
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 264 of 270

21.     I can recall only one instance in all the times that we executed a search warrant and seized computers where we did not find the illegal content at the dwelling identified in the search warrant.

22.     In that one instance, the Wi-Fi connection was not password protected, and the offender was a neighbor behind the residence.

23.     I never came across a Wi-Fi hacker situation.

24.     In my opinion, a child pornographer has a greater incentive to hack someone's Wi-Fi connection than a BitTorrent user because transmission of child pornography is a very serious crime with heavy criminal penalties, and many offenders can face life sentences if convicted.

25.     I tested IPP International U.G.'s ("IPP") IP detection process.

26.     To do so, I downloaded four public domain movies from the national archive.

27.     I then encoded text into the videos, so that I would know whether someone that downloaded that particular movie downloaded the version of the movie that I created.

28.     I then rented four virtual servers, each of which was connected to the Internet and used a unique IP addresses.

29.     I then configured the servers so that all of them were running Windows 2008 server edition, and I put a different BitTorrent client onto each server.

30.     A BitTorrent "client" is software that enables the BitTorrent protocol to work.

31.     After installing the BitTorrent clients, I also installed Wireshark onto each server. "Wireshark" is a program that captures network traffic and creates PCAPs, just as TCP Dump, which IPP uses, does.   A PCAP is like a video recording of all the incoming and outgoing transactions of a computer.

4

Exhibit Z - 20

Case 1:13-cv-02394-WYD-MEH   Document 32-10   Filed 03/20/14   USDC Colorado   Page 5 of 5
Case 8:14-cv-00874-CEH-AEP   Document 8-29   Filed 06/25/14   Page 22 of 27 PageID 367
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 265 of 270

32.     After installing Wireshark onto each of the servers, I transferred the movies from my local computer to the servers.

33.     I then used the BitTorrent clients on each of the servers to make .torrent files.  I uploaded these .torrent files onto various torrent websites.

34.     I then informed IPP of the movie names.  Thereafter, IPP sent me screen captures of the movies I had seeded.

35.     The screen captures sent by IPP had my codes on them; thus, I knew that IPP had caught the movies I had seeded.

36.     IPP also sent me additional data identifying the IP Address used by each of the four servers, and sent me PCAPs.

37.     I reviewed IPP's PCAPs vis-à-vis the PCAP log files created by each of my test servers, and determined that IPP's PCAPs match my PCAPs.  This could not have happened unless IPP's server was connected to the test server because the transactions would not match.

38.     From this test, I concluded that IPP's software worked, and had a subpoena been issued for my IP addresses, it would have revealed my identity.

**FURTHER DECLARANT SAYETH NAUGHT.**

## DECLARATION

**PURSUANT TO 28 U.S.C. § 1746**, I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on this 11th day of November, 2013.


By:_____
         **PATRICK PAIGE**

Case 1:13-cv-02394-WYD-MEH   Document 32-11   Filed 03/20/14   USDC Colorado   Page 1 of 3
Case 8:14-cv-00874-CEH-AEP   Document 8-29   Filed 06/25/14   Page 23 of 27 PageID 368
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 266 of 270

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:13-cv-02394-WYD-MEH

MALIBU MEDIA, LLC,

     Plaintiff,

v.

JEREMIAH BENSON,

     Defendant.

_____/

## DECLARATION OF MICHAEL PATZER

### I, MICHAEL PATZER, DO HEREBY DECLARE:

1.    I am over the age of eighteen (18) and otherwise competent to make this declaration. The facts stated in this declaration are based upon my personal knowledge.

2.    I work as an independent contractor predominantly for Excipio GmbH, a German company. I have extensive personal knowledge of Excipio's business.

3.    I personally designed, implemented, monitor and maintain the data collection system that Excipio both owns and uses to identify the IP Addresses used by people to commit copyright infringement via the BitTorrent Protocol.

4.    Excipio contracts with IPP to provide IPP with this data collection system which is the system that IPP uses to detect infringement of Malibu's works. Specifically, IPP licenses the use of Excipio's system and servers.

5.    The data collection system used by IPP has numerous components. It contains, *inter alia*: (1) a proprietary BitTorrent Client; (2) servers running a MySQL database which log

1

*MP*

Exhibit Z - 22

Case 1:13-cv-02394-WYD-MEH   Document 32-11   Filed 03/20/14   USDC Colorado   Page 2 of 3
Case 8:14-cv-00874-CEH-AEP   Document 8-29   Filed 06/25/14   Page 24 of 27   PageID 369
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 267 of 270

verified infringing transactions; (3) packet analyzers, also known as packet sniffers, which create and analyze PCAPs; (4) servers that run the proprietary BitTorrent Client and record PCAPs; (5) WORM ("Write Once Read Many") tape drives for storing the PCAPs and MySQL server data; (6) a program to synchronize the servers' clocks with both a GPS clock and an atom clock; (7) a proprietary program for checking the MySQL log files against the contents of the PCAPs.

6.      The BitTorrent Client used by Excipio is not commercially available and its code is a trade secret.

7.      It was written to overcome the unique challenges of entering into a massive number of BitTorrent transactions with a massive number of people without distributing data.

8.      If the servers are not synchronized with both the GPS Clock and atom clock to within one hundredth of a second the infringing transaction is not logged but instead disregarded.

9.      Every entry on the MySQL server log file correlates to a specific PCAP.

10.     Both the PCAPs and log files are saved onto WORM tape drives.

11.     There is no possibility that the information on these WORM drives can be edited.

12.     Further, each of the WORM tape drives is electronically stamped with a German government issued time stamp at least every twenty four hours.

13.     I independently reviewed the PCAPs for the IP address 76.25.62.43 and confirmed that the PCAPs recorded the IP address infringing Plaintiff's copyrighted works at the exact Hit Dates and UTC times listened on Exhibit A to Plaintiff's Complaint.

14.     No one, including myself, at Excipio has an ownership in IPP or vice versa.

15.     I do not have an ownership interest in Excipio.

16.     I am not paid for my testimony and am not entitled to any portion of any money received from a settlement or judgment in Malibu's favor.

2

MP

Case 1:13-cv-02394-WYD-MEH   Document 32-11   Filed 03/20/14   USDC Colorado   Page 3 of 3
Case 8:14-cv-00874-CEH-AEP   Document 8-29   Filed 06/25/14   Page 25 of 27 PageID 370
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 268 of 270

17.    Malibu has never paid Excipio or me anything.

**FURTHER DECLARANT SAYETH NAUGHT.**

## DECLARATION

**PURSUANT TO 28 U.S.C. § 1746**, I hereby declare under penalty of perjury under the

laws of the United States of America that the foregoing is true and correct.

Executed on this _13_ day of _March_ , 2014.

By: _____

**MICHAEL PATZER**

3

MP

Case 1:13-cv-02394-WYD-MEH   Document 32-12   Filed 03/20/14   USDC Colorado   Page 1 of 2
Case 8:14-cv-00874-CEH-AEP   Document 8-29   Filed 06/25/14   Page 26 of 27 PageID 371
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 269 of 270

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:13-cv-02394-WYD-MEH

MALIBU MEDIA, LLC,

      Plaintiff,

v.

JEREMIAH BENSON,

      Defendant.

_____/

## DECLARATION OF TOBIAS FIESER

**I, TOBIAS FIESER, HEREBY DECLARE:**

1.     My name is Tobias Fieser.

2.     I am over the age of 18 and am otherwise competent to make this declaration.

3.     This declaration is based on my personal knowledge and, if called upon to do so, I will testify that the facts stated herein are true and accurate.

4.     I am a salaried employee of IPP International UG ("IPP").

5.     IPP is a company organized and existing under the laws of Germany.

6.     I do not have an ownership interest in IPP nor any other entity involved in or affiliated with IPP's data collection system.

7.     I am not being paid for my testimony and do not have the right to receive any portion of a settlement or judgment in Plaintiff's favor.

8.     Malibu and IPP have a written fixed fee agreement pursuant to which Malibu pays IPP for providing the service of collecting data about infringements.

9.     IPP has not been paid anything for this case.

10.     Malibu has never paid nor offered to pay me anything.

1

Exhibit Z - 25

Case 1:13-cv-02394-WYD-MEH   Document 32-12   Filed 03/20/14   USDC Colorado   Page 2 of 2
Case 8:14-cv-00874-CEH-AEP   Document 8-29   Filed 06/25/14   Page 27 of 27 PageID 372
Case 1:14-cv-00263-RDB   Document 10-1   Filed 03/28/14   Page 270 of 270

**FURTHER DECLARANT SAYETH NAUGHT.**

## DECLARATION

**PURSUANT TO 28 U.S.C. § 1746,** I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this _19th_ day of _March_ , 2014.

By: _____
**TOBIAS FIESER**

Exhibit Z - 26